**In re Dennis ADAMS, Individually and in his capacity as a representative of American Motors Corporation, and American Motors Corporation.**

No. 76-368.

United States District Court,
E. D. Michigan, S. D.

Nov. 4, 1976.

Asst. U.S. Atty. John P. Conley, Detroit, Mich., for plaintiff.

W. Robert Chandler, Cross, Wrock, Miller & Vieson, Detroit, Mich., for Adams.

John M. Sheridan, Detroit, Mich., for American Motors Corp.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case involves the following question: Does the court have the power to punish by criminal contempt of court a person for threatening to discharge a juror from employment because of jury service?

After oral and written notice specifying the charges and service on the defendants of an order to show cause why the defendants should not be held in contempt, a hearing was held at which time the court heard the testimony of all persons having knowledge of the matters involved. The court makes the following findings and conclusions.

### Background.

On July 22, 1976, John E. Mayer was notified of his obligation to serve as a juror in the United States District Court for the Eastern District of Michigan, Southern Division, sitting in Detroit for the month of August. On August 16, Mr. Mayer was chosen to serve on a jury hearing criminal charges against a Marcellette Reynolds. Evidence was taken from day to day until a verdict was reached August 20.

Mr. Mayer held an official position involved in international sales with American Motors Corporation (AMC). His immediate superior was Dennis Adams. Both men held management positions with American Motors involving the pricing and sales of AMC products. August was a busy time for both men and their staffs as a result of the introduction and pricing of AMC automobiles. Mayer had his work in hand and believed the company would not be adversely affected by his absence for jury duty during the month of August. Problems arose over the pricing data supplied by Mayer, and Adams could not put the necessary information before other AMC personnel because of having to have some of Mayer's work redone.

After Mayer was sworn in as a juror on August 16, Adams informed Mayer of the problems with his data pertaining to the pricing of the AMC vehicles. Mayer indicated that because of the court's schedule he could be back in his office on the 17th by 2:00 p. m. in order to help out. Adams was not satisfied and directed Mayer to get the names of persons who could excuse him from jury service and said in effect, "If I don't have the names on my desk before tomorrow morning, you don't have to worry about coming back to work." The discussion was heated. The threat was explicit. Mayer felt threatened at first but later realized that his tenure at the company protected him from efforts on the part of Adams to discharge him. Adams testified that he did not intend the words used to be a threat of firing. Mayer gave Adams the names of persons to call and reported for jury service on the 17th and informed the jury clerk of the conversation with Adams.

Before court started on the morning of the 17th, Adams called the jury clerk for the purpose of obtaining the release of Mayer from jury service. He was told that Mayer was serving on a case and that he could not be excused. Adams made threats to two jury clerks with whom he was talking. One testified that he said, "He might not have a job to come back to." The other, although he could not remember the exact words, said that Adams told him that Mayer's job was on the line if he were not released from jury duty. Although the conversation started calmly, both jury clerks testified they felt that Adams was making a serious threat in an official capacity as Mayer's superior with AMC. These threats were referred to the court clerk and to the judge prior to the beginning of the day's proceedings. Mayer continued to serve and a verdict was reached.

The relevant portion of section 401 of Title 18, United States Code, reads as follows: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; . . . ."

█ The power provided by this section is limited and a person may not be held in

contempt under this provision unless the act done meets the requirement of the section. *Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). In that case, Justice Douglas pointed out that the substance of this act was enacted in 1831 to limit the power of courts to issue contempt citations, which, before that time, had been issued pursuant to a broader statute.

The requirements of the section are three:

1. A misbehavior of such a nature so as to obstruct the administration of justice.

2. The misbehavior must occur in the presence of the court or so near to the court so as to obstruct the administration of justice.

3. Because the contempt is in the nature of a criminal act, some intent is required.

### Were the Acts of Adams a Misbehavior of a Nature to Obstruct the Administration of Justice?

Persons selected as jurors become very special people. They as a group make up the most important single part of a court hearing a jury case. All other parts of the court in a criminal case are organized to provide assistance to the jury. Counsel marshal the evidence and articulate the reasons and grounds for jury action. The witnesses relate facts to be used by the jury in deciding the case. The reporter keeps the record; the bailiff keeps order. The judge manages the trial to make certain that an atmosphere of fairness prevails, that the trial runs smoothly and efficiently and that the rules of evidence and law are fairly applied. He also indicates to the jurors the rules of law by which they are to decide the case. The jurors, however, have the final power. They evaluate the witnesses and the evidence and the arguments of counsel. They decide the facts and apply the law to the facts in order to reach a conclusion. It is the jury on which society relies to deliberate so as to expose and neutralize the biases that each person has and to reach a verdict as free from bias as possible. Mr. Mayer was one of these persons.

Each juror is instructed over and over again during the trial about the need to protect the decisional process. The juror is cautioned about the need to decide the case based upon the facts produced in the courtroom and the law given by the judge; and therefore in order to protect that process the juror should not talk with anyone about the case or allow anyone to talk with him or her about the case. He or she should not stay in the presence of anyone talking about the case, and should not read anything, watch anything, or listen to anything that has any bearing on the case. This explanation is always put in context with the fact that jury service and the decisions made by jurors are the most important part of a lawsuit.

The courts expect a lot of jurors. They are not professionals but amateurs, brought out of the security of their homes and their jobs and placed in a position that is strange to them, in an environment that is at once austere, forbidding and at times frightening. It is not always possible to give them information as to why certain things are happening because of the need to protect the decisional process. Jurors are to be forever thanked for their willingness to serve in this most important aspect of judicial administration. Judges and lawyers must make certain that jurors are protected.

The protection of jurors from outside influences and efforts to bribe them or otherwise directly affect their decision-making is only one type of protection that courts must provide jurors. The courts need a fair cross section of jurors to provide panels that can bring to the process of deliberation the variety of viewpoints that has historically brought justice to the Anglo-American system of justice. Therefore, it is necessary as well to protect jurors from threats to their well-being which would tend to deny the courts this necessary cross section of jurors.

Threats to discharge a juror because of his jury service are contemptuous. Such

conduct can be as bad as attempts to fix a jury. A jury cannot be expected to listen in the relaxed, attentive manner required to absorb the evidence presented and to discriminate among that evidence, nor to take the time to deliberate and argue in a rational way to reach a unanimous verdict if the members of the jury are worried about the security of their employment positions as a result of threats made by their employers involving jury service. The statements made by Adams were of a kind that were immediately threatening to Mayer and tended to obstruct the administration of justice.

### Were the Acts in the Presence of the Court or so near to the Court so as to Obstruct the Administration of Justice?

The relevant portion of section 401(1) limits the contempt power to contempts that are geographically near the court. *Nye v. United States, supra.* It it not enough that the administration of justice is affected. The acts must be in or near to the presence (geographical) of the *court.* Other acts not in or near the presence of the *court* are left to the control of ordinary criminal law.

The acts of Adams were in the presence of the court or so near to the court to obstruct the administration of justice for two reasons:

1. His statement to the juror Mayer, in his presence, about his jury service was in the presence of a part of the court.
2. His statement to the jury clerk about a juror was near the court.

### Statement to the Juror.

■ For the purpose of section 401, a court is not a courtroom or a courthouse. A court is an entity that consists of a varying number of specific persons. At times the entity we call the court consists only of the judge acting in his official capacity. This would be the case when the judge is called on to decide a motion presented in a proceedings pending before him. At other times, the court includes a judge and a jury. This would be true during the trial of a

pending matter before a jury. Once the jury has been selected and sworn, the jurors for a given case become a part of the entity called a court until they are discharged. They have official duties of even greater importance in the trial of a case than does the judge, for they decide the facts and apply the law to the facts to reach the conclusion which we call the verdict and on which the judgment will be based. Their obligations as jurors continue during the time they serve as jurors in a given case—24 hours a day. During this whole time they are part of the court. In the courtroom they are listening to evidence and arguments. In the jury room they debate, discuss and deliberate. Even during a recess in the proceedings, during the day or overnight, they are subject to strict rules and their obligations are defined by law, to protect the court in its decisional process. They are told when they recess that they are not to talk with anyone nor to permit anyone to talk with them about the matters that have bearing upon this case. They are not to read, watch or listen to anything that could conceivably affect the case. In carrying out these duties, even when separated from each other, they are acting as jurors and are a part of the *court.*

Adams' threats to Mayer about the case on which Mayer was then sitting and his duties as a juror, although made at the office of AMC, were in the presence of the *court* as that word is used in section 401 of Title 18 of the United States Code.

### Statements to the Jury Clerk.

■ A court needs supporting personnel to operate. Besides a judge and jurors (in a given case), there are a number of persons having defined tasks to do the many things essential to make the entity of the court work. A clerk and deputy clerks are required to keep records and provide the ad hoc help for specific cases (jurors). They are a part of the court system. Whether they are actually a part of the *court* in the sense that the judge is, or that a juror is in a given case, need not be answered because they are physically located near to the

judge and the jury. Threats made to them are made near to the court because of their close physical proximity to the persons who fill the roles required by the entity known as the court. In this case, Ms. Burge and Mr. Pulis were physically located in the same room where the jurors report for duty and were located only one floor below the courtroom where this case was being tried. The threats to both Pulis and Burge were made "near the court" as required by section 401.

*Were the Acts done with the Required Intent?*

■ *United States v. Seale,* 461 F.2d 345 (7th Cir. 1972), discusses and describes the intent required to establish guilt under section 401, "The minimum requisite intent is better defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful . . Of course, an actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." pp. 368–69.

Adams intentionally made the statements to Mayer and to Burge and Pulis. He should reasonably have been aware that the threats made or implied could obstruct the administration of justice. It is no defense to the charge to say that "I did not intend to obstruct the administration of justice," as Adams now states. At best, this is to be considered in connection with the punishment to be provided.

■ When it was explained to him that the case on which Mayer was serving would last no longer than a week, Adams responded, "I can live with that." Defendants contend that Adams' recantation to Burge and Pulis purges the contempt. The contemptuous act was done when the threat was made. Purging contempt is a civil contempt procedure and has no place in the determination of guilt or innocence for criminal contempt, but it should and will be considered by the court in determining the appropriate punishment.

■ The defendants contend that they cannot be found guilty of contempt because the juror Mayer was not fired or because he showed up and sat, and there is no evidence that any act of Adams caused any problem in the actual presentation of the case. The misbehavior that obstructs the administration of justice in this case involves the threat to the ability of the court to protect the jurors who, without choice on their part, are required to disrupt their daily lives to perform the public service of attempting to do justice. Any threat directed at a juror or to the managers of the system who select the jurors, by a person who appears to be in a position to carry it out, cannot help but obstruct justice even though in a given case the matter proceeded as if the threat had not been made. The power of the district court is sufficiently broad to protect the decisional process without proof in each case that the obstruction succeeded. This has long been the law.

In a case in which the contemptuous act charged was the hiring of detectives to follow and observe members of a jury during a trial, the Supreme Court of the United States said:

"Counsel maintain that the petition does not adequately charge and the record fails to show misbehavior by appellants which obstructed the administration of justice within section 268, Judicial Code, since there is neither averment nor evidence that any operative actually approached or communicated with a juror, or attempted so to do, or that any juror was conscious of observation. The insistence is that to establish misbehavior within that section it was essential to show some act both known by a juror and probably sufficient to influence his mind. We cannot accept this view. It would destroy the power of courts adequately to protect themselves—to enforce their right of self-preservation. Suppose, for example, some litigant should endeavor to shoot a juror while sitting in the box during progress of the cause. He might escape punishment for contempt if some quick-witted attendant quietly thwarted

the effort and kept the circumstances secret until the trial ended . . . ."

\* \* \* \* \* \*

"Under the doctrine so stated, we think the trial judge rightly held it unnecessary to allege or show actual contact between an operative of the detective agency and a juror, or that any juror had knowledge of being observed. The reasonable tendency of the acts done is the proper criterion. Neither actual effect produced upon the juror's mind nor his consciousness of extraneous influence was an essential element of the offense." *Sinclair v. United States*, 279 U.S. 749, 762, 764, 49 S.Ct. 471, 475, 476, 73 L.Ed. 938 (1928).

■ Finally, this court is in no way intimating that a request for relief from jury service by a juror or any other person is contemptuous. The contempt in this case comes from the action in either explicitly or impliedly threatening a juror with some sort of retaliation if the juror does not do some act to effectuate release from jury service and from the making of direct threats to the jury clerks. Jury service is a duty of all. If the system is to work effectively, service on a jury must be accepted by all. Threats to get jurors not to accept this responsibility are contemptuous.

*American Motors Corporation.*

■ Adams represented AMC in his conversation with Mayer when he made the threat. He was Mayer's immediate supervisor. He told the jury clerks that he represented AMC and was Mayer's supervisor. On the stand he did not deny that he was at all times speaking for AMC.

AMC asserts that their policy is to encourage jury service. They do, in fact, have such a policy, including that of allowing persons who serve on juries to continue on the payroll of AMC and to keep the jury fees. This is commendable, but it goes only to the issue of the amount of punishment to be imposed. It does not undo the company's contemptuous conduct by the acts of its representative. Adams was a part of AMC management and a direct supervisor of the threatened juror. A corporation acts only through its managers. Valid general policy does not isolate a corporation from the specific wrongful acts of its managers in violation of that policy. The contemptuous acts of Adams were the contemptuous acts of AMC.

*Penalty.*

■ The following factors mitigate the punishment that should be imposed:

1. The apology of Adams for any threat to the court and its processes.
2. The policy of AMC to encourage jury service on the part of its employees.
3. The fact that the threats were not carried out and that the trial was able to proceed to a satisfactory conclusion.

Adams is fined $100.00 payable within ten days to the Clerk of the Court.

American Motors Corporation is separately fined $100.00 payable within ten days to the Clerk of the Court.

So ordered.