**Kirby A. JEFFREYS**

v.

**MY FRIEND'S PLACE, INC.**

No. 3–89–0049.

United States District Court,
M.D. Tennessee,
Nashville Division.

July 26, 1989.

Jon D. Ross, Neal & Harwell, Nashville, Tenn., for plaintiff.

M. Reid Estes, Jr., Nashville, Tenn., for defendant.

### MEMORANDUM

HIGGINS, District Judge.

On January 17, 1989, this action was brought by the plaintiff, Kirby A. Jeffreys, against the defendant, My Friend's Place, Inc. (MFP), doing business as Addictions Shoe Salon, of which the plaintiff was an employee. In his complaint, the plaintiff alleges that MFP, in violation of 28 U.S.C. § 1875 and Tennessee law, intimidated, coerced, threatened to discharge and did discharge him because he was selected for jury service by the courts.

On January 17, 1989, the plaintiff also filed a motion for a temporary restraining order and preliminary injunction, directing that he be reinstated to the position of employment that he held with the defendant MFP prior to September 17, 1988. This matter was heard on January 25, 26, 27 and 31, 1989, on the plaintiff's motion. As these findings demonstrate, a preliminary injunction directing the defendant MFP to reinstate the plaintiff to his previous position as manager of Addictions is warranted under the applicable law and is necessary to protect jury service by citizens called upon to do their duty, the integrity of the federal judicial system and the right to trial by jury.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1875 and the doctrine of pendent jurisdiction.

## I.

The defendant MFP is a Tennessee corporation. MFP was doing business as Addictions Shoe Salon (Addictions), a retail establishment engaged in the sale of shoes in Green Hills Mall in Nashville, Davidson County, Tennessee. Mrs. Jennifer Isaacs is the President of MFP, and her husband, Mr. William Patrick Isaacs, is its Secretary. At all times relevant to these proceedings, Mrs. Jennifer Isaacs was acting within the scope of her authority as President and sole shareholder of defendant MFP, and Mr. William Patrick Isaacs was acting within the scope of his authority as Secretary of MFP.

From October 13, 1986 until September 17, 1988, the plaintiff was employed by MFP as manager of Addictions.

On or about August 6, 1987, the plaintiff received a summons to appear as a petit juror in this District. At that time, he requested to be excused temporarily from jury duty due in part to a conflict with a scheduled buying trip by plaintiff for defendant's shoe salon. Plaintiff's request was granted by the Court. (Plaintiff's Exhibit No. 1.)

In December of 1987, the plaintiff was again summoned to appear as a petit juror. On December 11, 1987, Mrs. Isaacs telephoned Ms. Shari Tipton, the Deputy Clerk of this Court responsible for administering this District's plan for the random selection of petit jurors, regarding Mr. Jeffrey's jury service. From the testimony presented at the hearing it was clear that during this conversation Mrs. Isaacs was angry, rude and insulting to Ms. Tipton. Ms. Tipton stated that Mrs. Isaacs asked whether Ms. Tipton knew anything about the retail business and stated that she could not believe that Mr. Jeffreys had been summoned at such a busy time of year. Mrs. Isaacs asked that Mr. Jeffreys be excused. Ms. Tipton responded by advising Mrs. Isaacs that Mr. Jeffreys had not inform her there was a problem with his jury service and that if he had, she would have tried to work out something. She further informed Mrs. Isaacs that it was the practice of the Court to accommodate reasonable requests of jurors to be excused and reminded her that Mr. Jeffreys had been excused earlier in August of 1987.

Ms. Tipton removed Mr. Jeffreys' name from the list of jurors scheduled to appear on December 14, 1987, advised Mrs. Isaacs that Mr. Jeffreys was being excused[1] and asked Mrs. Isaacs to send a letter to the Court explaining the circumstances and setting forth the reasons for the request that Mr. Jeffreys be excused from jury service. Ms. Tipton also advised Mrs. Isaacs that if she or Mr. Jeffreys wanted a permanent excuse a request would have to be made to the Court.

Even though the Court did not receive such a letter from Mrs. Isaacs pertaining to the plaintiff's December jury service, Mr. Jeffreys was excused by the Court from jury service in December 1987 and was not absent from his job at that time.

---

**1.** The Court notes that Mrs. Isaacs admitted at the preliminary injunction hearing that Ms. Tipton advised her that the plaintiff was excused from jury duty in December and that he did not serve at that time. However, in her testimony before the Tennessee Department of Employment Security, Mrs. Isaacs testified to the contrary, stating that the plaintiff had advised her that he was required to serve jury duty and that he did in fact serve jury duty in December.

In February 1988 Mr. Jeffreys was again summoned to appear as a petit juror. He again was excused from jury service for reasons concerning his employment with MFP. On April 18, 1988, the plaintiff was summoned to appear as a petit juror, at which time he was selected to serve on a jury and served in this Court on April 18, 19 and 20, 1988.

About a month later, Mr. Jeffreys received notice to appear as a petit juror on May 23, 1988. Ms. Tipton testified that on May 18, 1988, Mrs. Isaacs again telephoned her and spoke to her in an extremely rude and abusive manner. Mrs. Isaacs told Ms. Tipton that the plaintiff was the manager and buyer for Addictions and that he would not be coming in for jury duty unless Ms. Tipton wanted to come out and run the shoe store while Mr. Jeffreys served. Ms. Tipton told Mrs. Isaacs that she would remove him from jury service on May 23rd. Ms. Tipton further informed Mrs. Isaacs that she would have to call Mr. Jeffreys again in the future for jury service unless Mrs. Isaacs wrote a letter to the Court requesting that the plaintiff be excused from jury duty and the Court excused him permanently.

Subsequent to this May 18 telephone conversation, the Court received a letter from Mrs. Isaacs wherein she requested that Mr. Jeffreys be excused permanently from jury service for the remainder of 1988 and 1989 and further stated that she could not operate her business with the plaintiff gone. (Plaintiff's Exhibit No. 3.) Although the Court denied defendant's request that plaintiff be excused permanently from jury service, plaintiff was excused from appearing in May 1988.

Mr. Jeffreys was again summoned to appear on June 27, 1988. On June 23, 1988, Mrs. Isaacs again had two telephone conversations with Ms. Tipton. The testimony shows that during both of these conversations, Mrs. Isaacs was threatening, angry, rude and abusive to Ms. Tipton. (Plaintiff's Exhibit No. 5). In the first telephone conversation on June 23th, Mrs. Isaacs advised Ms. Tipton that plaintiff was the manager of her store in Green

Hills and that the store would have to close if plaintiff reported for jury service. Mrs. Isaacs further stated that she would call the Mayor's office, the media—that she would go to whomever she had to—but that plaintiff was not coming in for jury service the following Monday, June 27th, as he had been summoned to do. According to Ms. Tipton's testimony, Mrs. Isaacs repeated several times: "He will not be there Monday, I'm telling you right now, he will not be there Monday." She even told Ms. Tipton that she could "send the Marshal out." Mrs. Isaacs told Ms. Tipton that if Mr. Jeffreys reported for jury duty, he would lose his job and that she would "leave the decision in the plaintiff's hands—he could report to jury duty or he could keep his job." Ms. Tipton informed Mrs. Isaacs that there were laws against firing employees because of their service on jury duty, to which Mrs. Isaacs responded by saying that she would find another reason to fire the plaintiff. The Court credits the testimony of Ms. Tipton. Although in Court Mrs. Isaacs denied threatening to fire Mr. Jeffreys in this June 23rd conversation with Ms. Tipton, she did admit that Ms. Tipton told her that it was illegal to discharge an employee because of jury service. Ms. Tipton had no reason to provide Mrs. Isaacs with this information had Mrs. Isaacs not been threatening to fire Mr. Jeffreys. The alleged conduct of MFP, through its agent, Mrs. Isaacs, in threatening to discharge Mr. Jeffreys by reason of his jury service constitutes a violation of 28 U.S.C. § 1875.

Later in the day, Mrs. Isaacs again telephoned Ms. Tipton and stated that she had spoken with someone from the Mayor's office who wanted to know the name of the judge. Ms. Tipton gave the name and telephone number of the Chief Judge of this Court, the Honorable Thomas A. Wiseman, Jr.

Subsequently, Mrs. Isaacs telephoned Judge Wiseman with regard to plaintiff's jury service and left a message requesting that he return her call. Judge Wiseman returned Mrs. Isaacs' call and left a message for her, which in substance was that the plaintiff would report for jury duty on

the following Monday and that if he did not report, Judge Wiseman would send the United States Marshal to bring him and Mrs. Isaacs into Court.

Mrs. Isaacs returned Judge Wiseman's call, at which time he informed her that he had been advised by Ms. Tipton that Mrs. Isaacs had threatened to fire Mr. Jeffreys and that the plaintiff would lose his job if he reported for jury duty the following Monday. The record shows that Judge Wiseman further advised Mrs. Isaacs that it was against the law for Mrs. Isaacs to fire Mr. Jeffreys or to take any adverse personnel action against him because of his jury duty. Mrs. Isaacs then told Judge Wiseman, in an abrasive and hostile manner, that the plaintiff was not going to serve and that she would go to the Mayor, the news media, or do whatever she had to do, but that Mr. Jeffreys was not going to serve on jury duty. When Judge Wiseman was firm with Mrs. Isaacs on the telephone concerning firing Mr. Jeffreys because of his jury service, she told him that she would find a reason to fire Mr. Jeffreys.[2] The conduct of MFP, through its agent, Mrs. Isaacs, in threatening to discharge Mr. Jeffreys by reason of his jury service in the telephone conversation with Judge Wiseman on June 23, 1988, constitutes a violation of 28 U.S.C. § 1875.

Mrs. Isaacs also threatened the plaintiff personally that she would fire him if he reported for jury service on June 27, 1988. However, after speaking with Judge Wiseman by telephone and being directed by him to appear regardless of what Mrs. Isaacs said, Mr. Jeffreys appeared for jury duty on June 27, 1988, as summoned.

The Court is satisfied that following the June 23, 1988, telephone conversations between Mrs. Isaacs and Ms. Tipton and Judge Wiseman, MFP initiated a calculated and intentional plan to carry out the threats of Mrs. Isaacs to discharge plaintiff because of his jury service. Part of this plan was an effort to create a seemingly legitimate reason for discharging the plain-

tiff which would serve to mask the true reason for the discharge—Mr. Jeffreys' jury duty. The evidence shows that after June 23, 1988, the plaintiff's work was subjected to exceptional scrutiny, which had not been the case prior to this time and which was not imposed on other employees. Moreover, after June 23, the plaintiff's job responsibilities were substantially changed. Mrs. Isaacs advised him in July 1988 that he could no longer purchase merchandise for Addictions. He was also relieved of his responsibility of preparing employee schedules and of his authority pertaining to discounts. Any difficulty in the employment relationship between plaintiff and defendant was caused by defendant through its altering of plaintiff's job responsibilities and increased scrutiny. Mrs. Isaacs testified at the prelimininary injunction hearing that she had threatened to fire Mr. Jeffreys for nine or ten months but felt sorry for him, his wife and his children. The Court does not credit this testimony. According to the evidence presented, the changes in attitude and conduct toward the plaintiff occurred after the problem over his jury service, not prior to it.

Another part of Mrs. Isaacs' plan to discharge Mr. Jeffreys is apparent from a conversation between Mrs. Isaacs and Ms. Fenton, another MFP employee, concerning the prospective termination of Mr. Jeffreys and his possible replacement by Ms. Karen Tallman, who had been hired by Addictions in 1988. During her testimony before the state agency, Ms. Fenton said that Mrs. Isaacs discussed Ms. Tallman's taking over the plaintiff's position before she fired him in September. However, during her testimony before this Court, she stated that the conversation was just a general discussion about Ms. Tallman's ability as a possible manager and claimed that Mrs. Isaacs never came out and said she intended to replace Mr. Jeffreys. Whichever version is correct, it is clear that the possibility of a new manager was on the mind of Mrs.

---

**2.** In her testimony in open Court on January 26, 1989, Mrs. Isaacs denied telling Judge Wiseman that if Mr. Jeffreys appeared for jury duty he would lose his job. She further denied that she

told Judge Wiseman and Ms. Tipton that she would find another reason to fire Mr. Jeffreys. The Court credits the testimony of Judge Wiseman and Ms. Tipton to the contrary.

Isaacs, and finding a replacement for Mr. Jeffreys is demonstrative of her other actions to bring about his discharge.

On September 17, 1988, Mr. Jeffreys arrived early for work at Addictions. He left work that day at approximately 5:00 p.m. The plaintiff claims that he had misread his work schedule and believed in good faith that he was scheduled to leave at 5:00 p.m., as he had worked until 5:00 p.m. most of the previous week. Ms. Stephanie Pomeroy, another employee who worked with the plaintiff that day at Addictions and had come in between 4:30 and 5:00 p.m., testified that she thought the plaintiff had left at the right time until she checked the schedule when Mrs. Isaacs called.

After Mr. Jeffreys arrived at home, Ms. Pomeroy telephoned him and advised him that the work schedule called for him to be present on the premises until 6:00 p.m. on that day and that Mrs. Isaacs had called and was angry because he had left at 5:00 p.m.

Mr. Jeffreys immediately returned to the shoe shop, arriving at approximately 5:20 p.m. Upon his return, he spoke by telephone with Mrs. Isaacs who advised him that he was terminated because of his unauthorized early departure on that day. Although Mr. Jeffreys offered to work over to make up the time which he missed, Mrs. Isaacs refused to allow this and persisted in her plan to fire plaintiff.[3]

Based upon the evidence presented at the hearing and the discrepancies in Mrs. Isaacs' testimony, the Court finds sufficient cause at this time to believe that the plaintiff was terminated by reason of his jury service, pursuant to the threats of Mrs. Isaacs. Mrs. Isaacs' testimony is directly contradicted by the testimony of Mr. Jeffreys, Ms. Tipton and Judge Wiseman. Mrs. Isaac's testimony was internally inconsistent and was contrary in material respects to her previous testimony given under oath at hearings before the Tennessee Department of Employment Security. The Court credits the testimony offered by plaintiff concerning the cause of his discharge and notes that neither Judge Wiseman nor Ms. Tipton have any personal interest at stake in this case.

After the termination of plaintiff's employment by defendant, Mr. Jeffreys made a claim for unemployment benefits from the Tennessee Department of Employment Security (TDES).

Plaintiff's claim for unemployment benefits was granted following a contested hearing initiated by defendant. During the state proceedings, Mrs. Isaacs submitted a letter to the TDES wherein she suggested that it was plaintiff's wife who had telephoned Ms. Tipton and had represented herself as Mrs. Isaacs. (Plaintiff's Exhibit No. 11). This statement had no basis in fact, particularly in light of Mrs. Isaacs' admission in this Court that it was she who in fact telephoned Ms. Tipton on May 18 and June 23, 1988. Mrs. Isaacs further stated in this letter that she believed that Mr. Jeffreys "cooked up the entire story with the judge." This statement likewise had no basis in fact, and the Court finds that it was included in this letter for the purpose of intimidating and coercing the plaintiff because of his jury service.

Defendant appealed the initial determination of the TDES, and the hearing officer at the second level again affirmed the grant of unemployment compensation benefits. The testimony of Mrs. Isaacs, given under oath at the TDES hearing, differed substantially and materially from the testimony given under oath before this Court.

Defendant has sought to pursue a further appeal of the determination that plaintiff is entitled to unemployment compensation benefits. In her letter initiating the most recent appeal, Mrs. Isaacs accused the plaintiff of dishonesty and of lying under oath. In this letter, she also denied making the June 23, 1988, telephone call to Ms. Tipton in which threats were made. Before this Court, however, Mrs. Isaacs admitted making that telephone call. The Court finds that the content of this letter is

---

**3.** This treatment of Mr. Jeffreys is not exemplary of Mrs. Isaacs' treatment toward other employees. For example, another store owned by MFP was closed early by its employees and yet no employees were terminated as a result.

unsupported by the record and further demonstrates that Mrs. Isaacs will take any and all action she deems necessary to coerce and intimidate the plaintiff and to injure him by virtue of his jury service.

Mrs. Isaacs' materially false statements under oath before the TDES and this Court were knowingly made in an effort to extricate herself and the defendant from the consequences of their deliberate violation of 28 U.S.C. § 1875. The conduct of MFP in challenging and continuing to appeal Mr. Jeffreys' entitlement to unemployment benefits constitutes intimidation and coercion of Mr. Jeffreys by reason of his jury service and is a violation of 28 U.S.C. § 1875. The conduct of MFP, through its agent, Mrs. Isaacs, in threatening to discharge plaintiff, and in giving under oath, statements known to be materially false, was in bad faith.

The Court finds that, unless enjoined by this Court, defendant will continue to intimidate and coerce plaintiff by reason of his jury service and in retalitation for his efforts to enforce his rights under 28 U.S.C. § 1875.

It is the clear public policy of the United States and the State of Tennessee that citizens who are summoned to jury duty in either the state or federal courts may not be interfered with by their employer or discharged by their employer in retaliation for discharging their duty as citizens.

The evidence presented demonstrates to the Court that defendant violated the clear public policy of the United States and the State of Tennessee by discharging the plaintiff in retaliation for his jury service in this Court, and by such discharge MFP has committed the tort of retaliatory discharge.

## II.

The Sixth Circuit has delineated the standard to be considered in assessing the necessity for preliminary injunction relief:

(a) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(b) Whether the movant has shown irreparable injury;

(c) Whether the preliminary injunction could harm third parties; and

(d) Whether the public interest would be served by issuing the preliminary injunction.

*Mason County Medical Association v. Knebel,* 563 F.2d 256, 264 (6th Cir.1977).

■ The facts set out in *Mason County* "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." *Tate v. Frey,* 735 F.2d 986, 990 (6th Cir.1984). Rather, the *Mason County* factors are to be balanced and are "not prerequisites that must be met." *In re Delorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985). Additionally, the facts should be applied in a flexible manner. *Gibson v. Sallee,* 648 F.Supp. 54, 56 (M.D.Tenn.1986).

■ The good faith of the parties is a "proper consideration in a determination whether a preliminary injunction should be granted." *Royal Crown Bottling Co. v. Royal Crown Cola Co.,* 358 F.Supp. 290, 294 (D.Col.1972).

■ The first element, substantial likelihood of success on the merits, has been regarded as one of the most significant in determining appropriateness of injunctive relief. *See Gibson,* 648 F.Supp. at 56.

28 U.S.C. § 1875(a) provides:

No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States.

28 U.S.C. § 1875 was enacted in recognition of the important function of the jury "as a counter to the exercise of arbitrary power." *Shea v. County of Rockland,* 810 F.2d 27 (2d Cir.1987). As noted in the legislative history, the petit jury has been characterized as "the lamp that shows that freedom lives." H.R.Rep. No. 1652, 95th Cong., 1st Sess. 5 *reprinted in* 1978 U.S. Code Cong. & Ad. News 5477, 5478 (*House Report*) (quoting Devlin, *Trial by Jury,* at p. 164 (1956)). The statute is designed to

protect the juror from any employer who is "hostile to the idea of jury duty, or who believes that the interests of his business outweigh the obligation for jury service imposed by law." *House Report, supra,* at 7, 1978 U.S.Code Cong. & Ad.News at 5480. *See Shea,* 810 F.2d at 27–28. Section 1875 has further been interpreted to impose on the employer "a duty to insure that [an employee is] aware that [he or] she could report for jury duty without fear of reprisal and with full pay." *Jones v. Marriott Court,* 609 F.Supp. 577, 579 (D.D.C. 1985).

Even before the enactment of section 1875, at least one district court in this Circuit characterized threats to discharge an employee because of his jury service as an obstruction of the administration of justice. *See In re Adams,* 421 F.Supp. 1027, 1031 (E.D.Mich.1976). In that case, a juror's supervisor, in conversations with the juror and with two jury clerks, threatened to discharge the juror if he were not excused. *Id.* at 1029. The Court recognized the importance of protecting jurors from such threats:

> A jury cannot be expected to listen in the relaxed, attentive manner required to absorb the evidence presented and to discriminate among the evidence, nor to take the time to deliberate and argue in a rational way to reach a unanimous verdict if the members of the jury are worried about the security of their employment positions as a result of threats made by their employers involving jury service.

*Id.* at 1031.

As established by the evidence in this action, MFP violated the provisions of § 1875 on at least five occasions, through the acts of its agent, Mrs. Isaacs, by threatening to discharge Mr. Jeffreys as a result of his jury service in conversations with Mr. Jeffreys, Ms. Tipton and Judge Wiseman on June 23, 1988; by actually discharging Mr. Jeffreys for that reason on September 17, 1988; and by its conduct before the TDES which was designed to further intimidate and coerce Mr. Jeffreys by reason of his jury service.

The proof offered by defendant to establish a legitimate reason for discharging the plaintiff was not credible. In determining whether the proffered reason for discharge is legitimate, the Court considers the "objectivity, sincerity, and honesty of the witnesses." *EEOC v. St. Joseph Paper Co.,* 557 F.Supp. 435, 440 (W.D.Tenn.1983). Material testimony offered by MFP, particularly that of Mrs. Isaacs, was not objective, sincere or honest.

The proffered reasons for the termination of Mr. Jeffreys' employment establish that, after June 23, 1988, plaintiff's performance was subjected to exceptional scrutiny and his job responsibilities substantially reduced, as a part of a plan to create a pretext to fire the plaintiff, just as Mrs. Isaacs had threatened she would do in her telephone conversations with Judge Wiseman and Ms. Tipton. The existence of such a plan is evidenced by Mrs. Isaacs' conversation with Ms. Fenton in August or September 1988, when she discussed replacing Mr. Jeffreys with Ms. Tallman.

Although intent to violate the law is not an element of a cause of action under § 1875, it is significant, in assessing the likelihood that Mr. Jeffreys will prevail on this claim, that Mrs. Isaacs was advised of the substance of the applicable law on at least two occasions by a deputy clerk and by a United States District Judge relating to the prohibition of discharging an employee based on his jury service. At those times, she expressly stated her intent to circumvent the law by finding another reason to fire the plaintiff. It is also worthy of note that the requests of MFP were accommodated on several occasions by excusing Mr. Jeffreys temporarily.

The Court is further influenced by Mrs. Isaacs' demonstrably false testimony with respect to the events leading up to these proceedings. Mrs. Isaacs represented to the Court that her business would have to close if Mr. Jeffreys had to serve jury duty and that the business could not be run in his absence, when such a representation was to her benefit in having plaintiff excused from jury duty. Mrs. Isaacs now takes the position that plaintiff, far from

being essential to the operation of the business, was in fact a problem employee. Mrs. Isaacs, knowing that her testimony was false, continued to change her story as she was confronted with her own prior inconsistent testimony and the testimony of unbiased witnesses.

The Court therefore finds that Mr. Jeffreys has established a very strong and substantial likelihood of success on the merits of his claim under § 1875. The strength of plaintiff's likelihood of success on the merits weighs heavily in the Court's balancing of the factors relevant to the determination of whether to grant plaintiff's motion for preliminary injunction.

Plaintiff's complaint further states a claim for retaliatory discharge under Tennessee law. In *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441 (Tenn.1984), the Supreme Court of Tennessee first recognized a cause of action for retaliatory discharge of an at-will employee. *Id.* at 445. In that case, an employee had been discharged because he had filed a workers' compensation claim. The Court held that "a cause of action for retaliatory discharge ... is necessary to enforce the duty of the employer, to secure the rights of the employee and to carry out the intention of the legislature." *Id.* Although *Clanton* dealt with workers' compensation claims, the Court has expressly extended the cause of action to other matters involving public policy. In *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552 (Tenn.1988), the Tennessee Supreme Court stated that a claim for retaliatory discharge lies in cases where violation of a clear public policy is a substantial factor in the termination of an at-will employee. As examples of "clearly defined public policies which warrant the protection provided by this cause of action," the *Chism* court referred to the discharge of employees for honoring a subpoena to jury

duty and for not seeking to be excused from jury duty.

The State of Tennessee has long recognized that "a litigant's right to trial by jury ... should be jealously guarded by the Courts." *Shook & Fletcher Supply Co. v. City of Nashville,* 47 Tenn.App. 339, 338 S.W.2d 237, 242 (1960). *See Tipton v. Harris,* 7 Tenn. (1 Peck) 414, 419 (1824).

The State of Tennessee has further recognized that a jury should be "influenced only by legal and competent evidence produced during the trial." *Durham v. State,* 182 Tenn. 577, 188 S.W.2d 555 (1945). As protection for jurors, the Tennessee General Assembly has specifically prohibited employers from discharging or discriminating in any manner against employees for serving jury duty if the employee gives proper notice of such jury service to his employer. *See* T.C.A. § 22–4–108.

As established by the facts set forth above, MFP discharged Mr. Jeffreys in retaliation for his appearing for jury service. Such conduct violates the public policy of the State of Tennessee. The plaintiff therefore has established a very strong and substantial likelihood of success on the merits of his claim of retaliatory discharge.

The second element to be considered in the determination of whether or not to grant preliminary injunctive relief is the irreparable injury caused to the plaintiff. As found previously, plaintiff, despite efforts to obtain other employment,[4] has been deprived of his salary and other benefits received through his employment with defendant. Additionally, the defendant's continued violation of § 1875 in challenging plaintiff's entitlement to unemployment benefits, threatens to deprive him of even this minimal income.

█ While economic loss alone generally does not constitute irreparable injury, the United States Supreme Court has recog-

---

4. Since being discharged from his employment, the plaintiff has searched for other employment. The only employment offered would require that the plaintiff move to Chicago, Illinois. The plaintiff has continuing family obligations in Nashville which preclude such a move, and the plaintiff is not required to move hundreds of miles away from his family to accept this position in order to mitigate damages. Plaintiff continues to be unemployed as of the date of hearing, and his sole source of income, his unemployment compensation, is being threatened by defendant's actions before the TDES.

nized that "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Sampson v. Murray*, 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166, 188 n. 68 (1974). The Court holds that the facts of this case compel such a finding.

In *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir.), *reh'g en banc denied*, 738 F.2d 167 (6th Cir.1984), the Sixth Circuit affirmed the district court's issuance of a preliminary injunction in an age discrimination case which had the effect of reinstating certain employees. The district court, recognizing the heavy burden which must be satisfied in order to warrant mandatory relief, granted such relief because the alleged injury was that which "Congress sought to avert" by enacting the applicable legislation. 733 F.2d at 1186. "Such findings support irreparable injury in other kinds of discrimination cases, and we believe the same factors support such a finding in this age discrimination case." *Id.* (citing *EEOC v. City of Janesville*, 480 F.Supp. 1375 (W.D.Wis.1979) [rev'd 630 F.2d 1254 (7th Cir.1980) ]) [5]; *Oshiver v. Court of Common Pleas*, 469 F.Supp. 645 (E.D.Pa.1979). Likewise, § 1875 was designed to prevent the very injury asserted here, that is, the intimidation, coercion and discharge of jurors. The injury to the plaintiff is incapable of being recompensed by monetary relief alone.

■ Section 1875 creates not only a private cause of action but also a "duty imposed upon employers ... [which] runs not only to the employee but even more importantly to the United States and its citizens in protecting the judicial process and the right to trial by jury." *House Report, supra*, at p. 15. Therefore, violation of § 1875 causes injury not only to an individual plaintiff, but also "to the United States and its citizens." The Court holds that the economic loss sustained by the plaintiff in addition to the injury to the United States and its citizens constitute irreparable injury.

Defendant's conduct, through its agent, Mrs. Isaacs, in making false statements under oath with regard to the plaintiff's integrity and competency further compels the conclusion that the circumstances of this case constitute irreparable injury. This conduct has the effect of reflecting adversely on Mr. Jeffreys' character, impugning the very integrity of the jury system, and threatening the ability of our system of justice to assure that litigants are able to enjoy their constitutionally-guaranteed right to trial by jury. Unless restrained and enjoined, Mrs. Issacs' campaign of coercion and intimidation initiated as a result of plaintiff's jury service will continue. The injury to plaintiff and the jury system itself is the gravest kind of irreparable injury.

The Court's finding of irreparable injury is further supported by analogy with cases involving constitutional violations. The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547

---

**5.** As defendant points out in its supplemental proposed findings of fact and conclusions of law, *Janesville* was reversed on appeal by the Seventh Circuit. *See EEOC v. City of Janesville*, 630 F.2d 1254 (7th Cir.1980). The district court's opinion was, however, cited with approval by the Sixth Circuit in *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir.1984). In relying on the district court's opinion, the Sixth Circuit obviously found its analysis to be more compelling than that expressed by the Seventh Circuit.

Additionally, on appeal, the Seventh Circuit first rejected the district court's conclusion regarding the reasonable likelihood of success on the merits. 630 F.2d at 1259. The Court then reviewed the balance of harm to the parties and concluded that the reinstatement would have a "deleterious effect" on the defendant. Addressing the question of irreparable injury, the Court found no basis in the record for the district court's finding that the plaintiff's skill and morale were deteriorating. The Seventh Circuit did not find, as a matter of law, that irreparable injury was never present with regard to discharge of an employee. Rather, the Seventh Circuit held that the facts of this particular case did not support the granting of preliminary injunctive relief.

(1976). Although plaintiff has not been deprived of a constitutional right, the effect of defendant's conduct on the ability of this Court to insure that the constitutional right to trial by jury is protected renders the analogy appropriate.

The Court is convinced that the defendant will continue its efforts to intimidate and coerce plaintiff and is likely to engage in further retaliatory action against him because of his efforts to enforce his rights under 28 U.S.C. § 1875 unless the Court intervenes and grants preliminary injunctive relief to prevent further injury to the plaintiff.

This finding of irreparable injury is supported by the particular facts of this case. MFP, through its agent, Mrs. Isaacs, not only threatened to discharge and did discharge the plaintiff, but did so with full knowledge that such action violated the law. The effect of such conduct not only on the plaintiff but also upon potential jurors and their employers directly contravenes the purpose of § 1875 to protect jurors from harassment of this type. Such behavior simply cannot be tolerated.

The conduct of the defendant had, and continues to have, the potential effect of intimidating jurors and of jeopardizing the Court's ability to insure the availability of jurors for trial. This effect, combined with the economic loss sustained by the plaintiff, is viewed by the Court to constitute irreparable injury.

The third element to consider is whether there is harm to third parties. Issuance of a preliminary injunction directing MFP to reinstate Mr. Jeffreys to his previous position of employment and to cease its violation of § 1875 would not cause harm to MFP or any third party. Certainly MFP would be required to pay Mr. Jeffreys his salary, but, in return, would receive his services.

Plaintiff's former position as manager has not been filled but his responsibilities have been shifted to other employees and to Mr. and Mrs. Isaacs.[6] Additionally, Addictions has advertised its need for an additional full or part-time employee. Consequently, plaintiff can be reinstated without displacing other employees or causing defendant to employ unnecessary personnel. The defendant's assertions that it will suffer injury through reinstatement on the ground that plaintiff is an incompetent employee are without merit. The proof clearly establishes that any alleged difficulty in the employment relationship between the plaintiff and defendant was created after Mrs. Isaacs' threats to Judge Wiseman and Ms. Tipton to discharge Mr. Jeffreys if he chose to perform jury service. Such difficulty is viewed by the Court as an effort on defendant's part to find a reason other than jury service to discharge the plaintiff.

The last element to be considered by the Court is whether the public interest would be served by issuing preliminary injunctive relief to plaintiff. In this case, the public interest would clearly be served by the issuance of a preliminary injunction directing that Mr. Jeffreys be reinstated to his previous employment with MFP. The public interest is of particular significance in a case arising under § 1875 because the statute was designed to impose a duty on employers running to the United States and its citizens. While the plaintiff is an individual pursuing his personal remedy, his action raises the broader issue of the breach of this important duty owed by MFP to the United States and its citizens.

Reinstatement of Mr. Jeffreys will make clear to others summoned for jury duty that the Court is willing and able to offer the protection promised by § 1875 in a meaningful way. Moreover, the public's perception of the significance of this duty and of the role of the juror in the judicial system will be enhanced by the Court's protection of those who are called to serve. Section 1875 is not a paper tiger; this Court will take all necessary and appropriate action to facilitate the full protection of

---

6. The Court does not understand why Mr. Jeffreys' temporary jury service was such a large inconvenience at the time he was summoned, when, upon request, he was excused temporarily when needed by Addictions, and since his discharge in September of 1988 no new manager has been hired to replace him as of the date of the hearing.

jurors envisioned by Congress in enacting it.

Since the plaintiff has satisfied the criteria for issuance of preliminary injunctive relief, the Court finds that plaintiff's motion should be granted.

The Court has the power and, in light of the compelling nature of these circumstances, indeed, the duty to fashion a remedy which will protect the interests of the plaintiff and the public during the pendency of these proceedings. Cf. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280, 297 (1975). The injunction requested is narrowly tailored to the facts of this case and will not bestow undue benefit on the plaintiff or cause undue hardship to the defendant.

Prior to the time of his termination, plaintiff was an employee at will. Under Tennessee law, an employee at will may be terminated for any reason or for no reason but may not be terminated for a prohibited reason. *See Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441 (Tenn.1984). Discharge of an employee at will for the reason of jury service is prohibited under Tennessee law. *See Chism v. Mid–South Milling Co.,* 762 S.W.2d 552 (Tenn.1988). Additionally, 28 U.S.C. § 1875 renders discharge by reason of jury service illegal. Consequently, at the time of his discharge, plaintiff could have been discharged for any reason or no reason, but not because of his jury service.

Issuance of the injunction will not alter the employment relationship between the plaintiff and the defendant as it existed prior to September 17, 1988. Just as before September 17, 1988, defendant will be unable to discharge plaintiff for any reason prohibited by law. The injunction will, however, provide plaintiff with strengthened protection against discharge or other adverse employment action in violation of 28 U.S.C. § 1875 and Tennessee law. This added protection, by virtue of the Court's power to enforce its orders, is amply justified by the clear and convincing proof of the defendant's violations in the past and the equally clear proof that these violations are very likely to continue in the future.

In fashioning a remedy which will satisfy the interests of the plaintiff and the public with minimal interference with the operation of the defendant's business, the Court takes guidance from the EEOC's suggested remedial provisions for retaliation cases. *See EEOC Compliance Manual,* § 1213 at ¶ 7852. Therein, the EEOC suggests a procedure whereby:

> Respondent will submit to the EEOC any warnings or reprimands given to the charging party during the next one (1) year following the effective date of this agreement and notify the district director prior to taking of any adverse action against the charging party.

The Court is of the opinion that requiring the defendant to submit all warnings and reprimands to the plaintiff and his attorneys and to provide notice prior to the taking of any adverse action against the plaintiff will adequately protect the rights of all parties. Upon receipt of a warning, reprimand or notice of intent to take adverse action, the plaintiff and his attorneys may review the pertinent facts and, if necessary and appropriate, move for the appointment of a special master to determine whether the action of the defendant is in violation of the injunction.

By utilizing this procedure, the defendant will continue to be able to make legitimate and necessary employment decisions with minimal interference by this Court.

■ The Court further finds that the preliminary injunction be granted without security. The question of whether security must be posted and, if so, the amount, is left to the Court's discretion. *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 385 n. 42 (D.C.Cal.1982). Waiving security or requiring mere nominal security is particularly appropriate "where requiring security would effectively deny access to judicial review." *People ex rel. Van de Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1325 (9th Cir.1985). Mr. Jeffreys has demonstrated that, in light of his precarious financial condition caused by his termination in violation of law, the request-

ed injunctive relief should be granted without security.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, the plaintiff's motion for a preliminary injunction is granted. Accordingly, the plaintiff, Mr. Jeffreys, shall be reinstated immediately to his position as manager of Addictions, with the same salary and benefits as of the date of his termination, pending the outcome of this action.

The defendant shall not discharge the plaintiff for any reason prohibited by law. The defendant shall submit all warnings and reprimands to the plaintiff and his attorneys in writing. The defendant shall give the plaintiff and his attorneys five (5) working days notice prior to taking any adverse action against the plaintiff.

No bond for the issuance of this injunction shall be required.

It is so ORDERED.