**U.S., ex rel. Carol A. Recio MADONIA,**

v.

**CORAL SPRINGS PARTNERSHIP, LTD. d/b/a Supercuts.**

**UNITED STATES of America, Plaintiff,**

v.

**Benjamin Barry KRAMER, et al., Defendant.**

**No. 87–879–Cr–NCR.**

United States District Court, S.D. Florida, Miami Division.

Feb. 1, 1990.

Robert Bondi, Asst. U.S. Atty., Office of U.S. Atty., Miami, Fla., for plaintiff.

E. David Rosen, Lawrence N. Rosen, Arthur W. Tifford, Albert J. Krieger, Miami, Fla., Mary Catherine Bonner, Ft. Lauderdale, Fla., and Michael S. Pasano, Miami, Fla., for defendant.

### ORDER

ROETTGER, District Judge.

THIS CAUSE is before the court SUA SPONTE after having received notice from the first alternate juror, CAROL RECIO MADONIA, during this trial, that her employer, SUPERCUTS, was threatening her with non-payment of wages and other benefits, as well as causing other problems because of her service as a juror.

### BACKGROUND

This matter first came to the attention of the court when a note from Mrs. Madonia that her employer was balking at paying

6. The Government's Motion for Upward Departure is DENIED. The Court finds no basis for departure on this record.

her during jury service was passed on to this court. At that time this court tried to head off the problem by sending a letter to her employer, SUPERCUTS, with a copy of the federal statute on Protection of Juror's Employment, 28 U.S.C. § 1875, and a copy of Protection of Juror's Employment, 28 U.S.C. § 1875, and a copy of the closest reported case on point, *U.S. v. Adamita*, 701 F.Supp. 85 (S.D.N.Y.1988) (ruling and opinion by Judge Sprizzo.)

Thereafter, this court was again informed by Mrs. Madonia that her employers had once more indicated that they did not have to make any such wage payments and further setting forth other problems arising at work from her tenure as a juror, including changes in her work schedule, and fear of loss of seniority in her position at SUPERCUTS. As a result of that note and with the consent of all parties involved in the trial, this court asked Mrs. Madonia some questions on the record following the day's trial schedule in the more informal setting of the jury room to avoid any setting with a possibly intimidating effect on Mrs. Madonia. By such inquiry, the court was trying to understand exactly what the situation was and whether or not the provisions of the statute should be implemented further.

Following this inquiry, this court determined that a hearing was necessary to see if a violation of the statute was occurring and also implemented that portion of the statute permitting the appointment of a lawyer for Mrs. Madonia, thereby allowing this court to retain its traditional role of impartiality. If a lawyer had not been appointed, then this court would have found itself in the uncomfortable position of asking questions of both sides.

Thereafter, this court issued a Subpoena to SUPERCUTS and a hearing was held before this court.

## FINDINGS OF FACT

This court finds that Mrs. Madonia has been employed for one year at SUPERCUTS. SUPERCUTS is a national franchising organization with many hair salons using the name SUPERCUTS. Mrs. Madonia had served as a juror once before for four days during her time of employment. At that time, she received her regular salary with no deduction in pay or benefits. That jury service was in the state court system, apparently.

When she received her notice to report for jury service in federal court, she took the notice to her employer.

After her first jury service, Mrs. Madonia was not advised of any company policy about being paid; consequently, she assumed she would be compensated for this service inasmuch as she had been compensated previously. However, she was concerned enough about being paid that, before reporting for federal jury service, she inquired of Terry, a bookkeeper of SUPERCUTS, who advised her that she would be paid this time also. Nancy Vusko, the general manager of all SUPERCUTS salons in Broward County, testified that the matter should have been brought to her attention. However, Ms. Vusko freely conceded it was not Mrs. Madonia's fault that she went to ask Terry, and that no one at SUPERCUTS advised Mrs. Madonia of any company policy contrary to the advice the bookkeeper gave juror Madonia. This court finds Mrs. Madonia had every right to rely on Terry's assertion, especially since it was consistent with her past experience with jury service and no one informed her of any policy to the contrary.

On January 3, 1990, when Mrs. Madonia was selected as the first alternate juror in the above-styled case, she was informed by this court that the trial would last several weeks. She could not tell SUPERCUTS the exact length of trial time inasmuch as this court did not know at that time how long this multiple defendant, drug importation/international money-laundering trial would last. Trial is held four full days per week and should be completed about the end of February.

Mrs. Madonia's work schedule prior to jury service was flexible, but, generally, she worked five days a week, six to eight hours per day and she had recently been promoted to a managerial status in that shop, as Assistant Manager. On Saturday,

January 13, 1990, Mrs. Madonia was informed in a meeting with Nancy Vusko that she would have to work more nights to make up for missing days on jury service. This constituted a change in conditions from what the juror had previously worked. It is the finding of this court that Mrs. Madonia's testimony is credible and although it is not the policy of this court to intervene in labor conditions involving jurors, that she is now being penalized and criticized for doing things she was never criticized for before. This indicates to this court that there has been a change in the attitude of the employer towards Mrs. Madonia directly as a result of her jury service that smacks of retaliation.

At this time, Mrs. Madonia is scheduled every Friday, which is the customary day this trial is not in session, and all day every Saturday and Sunday compared with alternate Sundays or one Sunday monthly previously. Additionally, she now must work three weeknights from six to nine p.m. after sitting on the jury that day. This schedule change came because she was told by Nancy Vusko that SUPERCUTS did not have to pay her except for the hours she actually worked.[1] The juror testified that she needed the money and so had to work those hours.[2] Mrs. Madonia previously worked elsewhere in the evenings when she wasn't working at the beauty salon.

The testimony of Nancy Vusko indicates that the beauty salon employs seven to nine persons and their hours are flexible so that Mrs. Madonia's jury service does not create an economic hardship for the employer and the shop is not understaffed. David Parsons, the part owner of the SUPERCUT franchise, admitted that there was a shortfall of $2.00 to $8.00 a day between Mrs. Madonia's jury pay and her regular pay at work.

### CONCLUSIONS OF LAW

Several issues are presented to this court in this matter: first, it is necessary to determine the purpose of the statute, 28 U.S.C. § 1875. The statute's purpose is clear: to protect jurors in their employment in every way while they're on federal jury service. The government only asks for a citizen's time in two situations: One is military service and the other is jury service. Persons in the military service are broadly protected by the Soldier's and Sailor's Civil Relief Act of 1940. 50 App.U.S.C. § 501 *et seq.*

■ Jurors are also now protected by 28 U.S.C. § 1875 enacted in 1972, although the protection is not as broad. The purpose is very clear as is evident from a reading of it which in pertinent part says that: "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." The statute further provides for damages and injunctive relief.

What has been shown here is intimidation of the juror because she is unsure whether she will be paid. In fact, she has now been told she will not be paid after being told prior to jury selection she would be paid. There is additional coercion in threats as to her seniority because she has missed a management meeting. That is not permitted nor will it be tolerated. $2.00 to $8.00 is important to the alternate juror and that shortfall per day above her juror pay is a violation of this statute as is the change in her working conditions.[3] The statute does not contemplate that the juror must change her working conditions; what it does contemplate is the juror will be protected from any deprivation by the employer during or because of her jury service.

It is particularly critical that a juror not be distracted by concerns as to the juror's

---

1. Supercuts belongs to a national organization which provides the franchises with labor law advice. From the exhibit received at the hearing, it is apparent this office believed the jury service to be Broward County jury service as the "advice" did not address 28 U.S.C. § 1875 at all.

2. Previously, Mrs. Madonia worked at a part time job two to three nights per week at Cunningham Drugs from six to nine p.m., but has not worked there since her jury service began.

3. See *In re Webb*, 586 F.Supp. 1480 (N.D.Ohio 1984)

wages, seniority status and other benefits, working conditions, etc. To protect citizens serving as jurors from such concerns and distractions was the Congress' clear objective in enacting 28 U.S.C. § 1875.

WHEREFORE, it is

ORDERED AND ADJUDGED that CORAL SPRINGS PARTNERSHIP LTD., d/b/a SUPERCUTS, make good the differential of FIVE ($5.00) DOLLARS per day of jury service[4] and to bring that sum current at once.

■ It is further

ORDERED AND ADJUDGED that there be no change in juror Madonia's schedule and it be restored to what it was prior to jury duty.[5] This court finds the recent changes in her schedule have been made purely because of her duty as a juror and they impact on her attentiveness as a juror. It is further

ORDERED AND ADJUDGED that SUPERCUTS must reimburse this court for its cost in paying Mrs. Madonia's Court Appointed Attorney, KAREN ZANN, as provided in Section (d)(2) of 28 U.S.C. § 1875.

It is further

ORDERED AND ADJUDGED that since a civil penalty of $1,000.00 may be imposed for each offense under this statute, this court imposes a fine of only $250.00 against SUPERCUTS because there have been some efforts on their part to seek advice with respect to the statute. This fine shall be suspended provided that the payment of arrearages owed to Mrs. Madonia are paid within five (5) days from the date of this Order. It is further

ORDERED AND ADJUDGED that SUPERCUTS is hereby enjoined from any

deprivation of seniority benefits, managerial benefits, and any such other benefits now bestowed upon Mrs. Madonia as a result of her employment with SUPERCUTS. The court expects that there will be no further problems in this matter.

This court retains jurisdiction of this matter to enforce this injunction and the statute and, further, to determine the amount of the attorney's fee.

DONE AND ORDERED.

---

**4.** The juror receives THIRTY ($30.00) DOLLARS per day federal jury pay and the average of the $32–$38.00 a day which SUPERCUTS admitted was the juror's shortfall in wages.

**5.** The only evidence before the court as to Sunday work requirements previously was that she worked alternate Sundays or one Sunday monthly prior to jury service whereas she now must work every Sunday. Clearly, working every Sunday now gives Mrs. Madonia no day off

during jury service from jury or work obligations, a departure from her prior schedule. Therefore, a Sunday schedule of every third Sunday for Mrs. Madonia would be considered as sufficient compliance.

Mrs. Madonia does not have to work evenings at SUPERCUTS on the week nights of Monday through Thursday, inclusive, because that schedule change has resulted solely from her jury service, contrary to the statute.