Shirrel L. LUCAS, Plaintiff,

v.

MATLACK, INC., a corporation, Defendant.

Civ. A. No. 93–0006–W(S).

United States District Court, N.D. West Virginia.

Nov. 1, 1993.

G. Charles Hughes, Moundsville, WV, for plaintiff.

Frank X. Duff and Sandra K. Law, Wheeling, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

STAMP, Chief Judge.

### I. Background

Plaintiff, Shirrel Lucas ("Lucas"), a member of a Special Grand Jury of this Court, filed this civil action against his employer, Matlack, Inc. ("Matlack"), for alleged violations of 28 U.S.C. § 1875 ("the Jury Act"). On July 15, 1993, Matlack filed a motion for entry of summary judgment on the merits pursuant to Fed.R.Civ.P. 56. Although Lucas did not timely respond to this motion for summary judgment, on September 1, 1993,

this Court granted Lucas an extension of time to file a response to the summary judgment motion. On September 8, 1993, Lucas filed a memorandum in opposition to Matlack's motion for summary judgment. On July 16, 1993, Lucas filed a motion for summary judgment. On July 30, 1993, Matlack filed its response to Lucas' summary judgment motion.

On October 4, 1993, the parties participated in a settlement conference before this Court. The parties were not able to reach a settlement agreement. At that conference, the Court directed the parties to submit further brief on the law regarding the arbitration of the rights at issue in this action. On October 13, 1993, both Lucas and Matlack filed memoranda on the arbitration issue. On October 15, 1993, Lucas filed a reply memorandum on the arbitration issue.

This action was filed pursuant to the Jury System Improvements Act, 28 U.S.C. § 1875. Therefore, this Court has subject matter jurisdiction over this federal question pursuant to 28 U.S.C. § 1331.[1]

Pursuant to this Court's scheduling order, all discovery in this action is completed. This Court has now reviewed the applicable law and memoranda in support of and in opposition to the cross-motions for summary judgment. For the reasons stated herein, this Court concludes that Matlack's motion for summary judgment is GRANTED and Lucas' motion for summary judgment is DENIED.

## II. Statement of Facts

Lucas is and was at all times relevant to this cause of action an employee of Matlack, a trucking company, working out of its New Martinsville terminal. On or about November 18, 1991, Lucas was chosen to serve as a special grand juror in the Northern District of West Virginia convened by Chief Judge Robert E. Maxwell. The Special Grand Jury met in excess of seventy-five days during a time period beginning in 1991 and ending in 1993.

Lucas is a union employee with Matlack, and the terms of his employment are governed by a collective bargaining agreement. Under the terms of the union's collective bargaining agreement, all union employees, including Lucas, are paid for ten days of jury duty service per year.[2] Lucas was aware of this union agreement regarding compensation while serving as a juror. Lucas received compensation pursuant to the terms of the collective bargaining agreement for ten days of jury duty service each year in which he has served as a juror. Lucas has not received any compensation from Matlack for any days on which he has served as a juror in excess of the original ten days per year and was never told or promised by Matlack that he would receive payment beyond what is provided in the collective bargaining agreement. All union employees under the collective bargaining agreement are treated identically with regard to jury duty compensation.

Lucas alleges that Matlack's terminal manager, Leo Boats, made certain statements intending to intimidate Lucas from serving on the Special Grand Jury. Mr. Boats allegedly told Lucas to tell the judge that Lucas was prejudiced. Lucas also alleges that he was told that the terminal could not afford to let him serve on jury duty and that Mr. Boats had called Judge Maxwell to request that Lucas be relieved from jury duty. Lucas claims that when he gave a jury statement to the terminal manager, Mr. Boats stated "I don't need any more toilet paper" and on more than one occasion told Lucas to "Hang the jury." Finally, Lucas claims that the terminal manager complained on numerous occasions about the jury service and inquired as to when Lucas would be finished.

---

**1.** In his complaint, Lucas also refers to potential criminal violations of W.Va.Code § 61–5–27. However, this Court does not have jurisdiction to consider violations of West Virginia criminal statutes.

**2.** The collective bargaining agreement provides that:

Any employee who has been employed for at least one (1) year and who is required to serve on jury duty on his regularly scheduled work day will receive the difference between eight (8) hours' pay at the applicable straight time hourly wage and actual payment received for jury service for each day of jury duty on which the employee would have been scheduled to work, up to a maximum of ten (10) days.

Though Matlack does not admit that the terminal manager made any of these statements, Matlack argues that they amount to nothing more than joking comments made between Lucas and the terminal manager who are good friends and frequent golfing partners. Matlack contends that Lucas went to his employer when he learned of the jury service and asked if there was anything that Matlack could do to get Lucas out of this service. Therefore, Matlack suggests that comments about the inconveniences surrounding jury service may have been made by both Lucas and Matlack. Matlack contends that the terminal manager never personally called Judge Maxwell about this matter but simply contacted the Clerk's Office for confirmation of jury duty service.

Matlack contends that Lucas' employment position has not changed or altered in any way since he started his jury duty service, that Lucas was not discharged or threatened with discharge because of his jury service, and that Matlack never prevented Lucas from attending jury duty.

Lucas seeks the sum of all wages and other benefits lost, as well as prejudgment interest thereon, by reason of Lucas' jury service less a set off for the monies paid to Lucas by the United States in attendance fees. Lucas also seeks a civil penalty in the amount of $1,000.00 for each and every day that said defendant failed to compensate the plaintiff for his jury service. Finally, Lucas requests pre-judgment and post-judgment interest and costs and expenses, including a reasonable attorney's fee.

### III. *Contentions of the Parties*

Lucas argues that the Jury Act imposes on Matlack the duty to pay Lucas full wages while he was serving on the grand jury and that failure to pay full wages amounts to coercion and intimidation under the Jury Act. Lucas argues that Matlack cannot rely on the provisions of the collective bargaining agreement for its failure to pay wages and other lost benefits. Lucas claims that provisions of the collective bargaining agreement cannot supplant or diminish Lucas' statutory rights in 28 U.S.C. § 1875.

Matlack contends that any statements between the terminal manager and Lucas were joking comments made between friends expressing a mutual feeling that jury service was inconvenient. Matlack contends that these statements do not amount to actual coercion or intimidation and that no negative actions were taken against Lucas and that Lucas was in no way adversely affected because of his jury service.

As to the Jury Act, Matlack contends that the language of the statute does not require an employer to pay an employee full wages while that employee is away from work because of jury duty service but rather that the statute prohibits the non-payment of wages in an intimidating or coercive fashion. Matlack contends that Congress has not placed this burden on employers or indicated an intent to interfere with collective bargaining agreement provisions dealing with jury duty. Matlack contends that without such a specific mandate employers should not have to bear this hardship. Matlack contends that the collective bargaining agreement merely allows the additional benefit of ten days per year of jury pay, but that this benefit is not required by the Jury Act. Matlack states if the union contract had forbidden jury service or sanctioned some type of penalty because of jury duty service, then the union contract provision would unquestionably be invalid under 28 U.S.C. § 1875. Matlack states that the mere existence of a jury service/wage limitation provision does not violate the statute so long as it is equally and fairly applied to all employees. Matlack contends that Lucas was treated fairly and equitably, and that the policy of paying an employee only for the first ten days of jury service pursuant to the collective bargaining agreement does not violate the Jury Act.

Alternatively, Matlack contends that Lucas should be required to exhaust his administrative remedies under the collective bargaining agreement before proceeding with this civil action. Although Lucas filed a grievance, he never received a decision on the grievance or pursued the matter to arbitration. Matlack argues that a claim for payment of the wages while serving as a juror clearly falls under the language of the collective bargaining agreement and Lucas must follow the grievance and arbitration remedies under the con-

**228**

tract before resorting to seeking redress from this Court.

## IV. *Rule 56 Standards*

■ Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Id.* The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* Rule 56(c) itself provides that "a party opposing a properly supported motion for summary judgment 'may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. *See also Charbonnages De France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (*citing Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950))).

■ In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery.

*Oksanen v. Page Memorial Hosp.,* 912 F.2d 73, 78 (4th Cir.1990). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## V. *Analysis*

■ According to the Jury Act, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a). For violations of the statute, a successful plaintiff may be awarded damages, a civil penalty, or injunctive relief. 28 U.S.C. § 1875(b). In recognition that jury service is often inconvenient to both employers and employees, the Jury Act assists in the maintenance and independence of the judicial system by giving judicial protection to those who are called upon to serve as jurors. *Rogers v. Comprehensive Rehabilitation Associates,* 808 F.Supp. 493, 498 (D.S.C.1992). "This statute was designed to protect the juror from any employer who is 'hostile to the idea of our jury duty, or who believes that the interests of his business outweigh the obligation for jury service imposed by law'". *Id.* (*quoting Jeffreys v. My Friend's Place, Inc.,* 719 F.Supp. 639, 644–45 (M.D.Tenn.1989)). Under the statute, an employer has the duty to insure that his employees can report for jury duty without fear of reprisal. *Id.*

■ Although this Court recognizes that the Jury Act imposes a very serious duty upon employers, the Court does not conclude that the statute requires an employer to pay an employee full wages while that employee is away from work because of jury duty service. In *Rogers v. Comprehensive Rehabilitation Associates,* 808 F.Supp. 493 (D.S.C. 1992), the Court researched the issue of compensation for jurors and found that, although there was a law requiring employers to pay salaried jurors for financial losses sustained as a result of jury service, *see* 29 C.F.R.

§ 541.118, there is no similar compensation for employees paid on an hourly basis. *Id.* at 497 n. 4.[3] Although Lucas correctly asserts that many courts have required employers to pay employees full wages as damages for violations of the Jury Act, no court has interpreted the Act to include a general rule requiring payment of wages in all cases. In each of those cases requiring payment as a penalty under the Jury Act, the court made a factual finding that the employer's failure to pay full wages amounted to coercion or discrimination under the statute in that specific case.

For example, in *United States, ex rel. Madonia v. Coral Springs Partnership Ltd.*, 731 F.Supp. 1054 (S.D.Fla.1990), the Court found that an employer violated the Jury Act by requiring an alternate juror to work more nights in order to make up for missing days on jury service, threatening her seniority for missing a management meeting, and failing to pay the difference between her jury pay and her regular wages. *Id.* at 1056. By taking inconsistent positions on whether the employee would be paid for jury service, the Court found the employer's actions amounted to "intimidation of the juror because she was unsure whether she will be paid." *Id.* at 1056. Thus, the Court held that the employer would be required to pay the accrued wage differential.

Lucas relies on *Jones v. Marriott Corp.*, 609 F.Supp. 577 (D.C.Cir.1985) for the proposition that an employer has a duty to insure that an employee is aware that he can report for jury duty without fear of reprisal and with full pay. However, the facts in *Jones* substantially differ from this case. The employer in *Jones* informed the plaintiff that the corporation granted paid leave for all permanent employees who are summoned for jury duty. However, when the plaintiff informed her supervisor that she had been summoned for jury service, the employer failed to re-explain to plaintiff the paid leave policy and failed to offer plaintiff any other assistance. The supervisor also made negative comments to the plaintiff concerning her jury duty by asking her to postpone her service until she had accrued vacation time and implying that she might not have a job when she returned if she reported for jury service. Fearing she would lose her job if she obeyed the summons, the plaintiff sought advice of counsel. The Court found that this action was sufficient to establish that the employer coerced the plaintiff into seeking legal advice in order to protect her employment. The Court awarded the plaintiff $200 for the expenses she incurred in obtaining postponement of jury duty.

The *Jones* decision does not recognize a duty to pay all employees full wages for jury duty service. The Court simply enforced the employer's policy of granting paid leave for all permanent employees who are summoned for jury duty. Nowhere in *Jones* does the Court even imply that the employer's policy was mandatory. In this action, the collective bargaining agreement explicitly provides for only ten days of paid leave for jury duty. Lucas does not deny that he was fully aware of Matlack's policy. There is no allegation that Matlack deviated from this policy with respect to Lucas or any other employee. Therefore, Lucas cannot argue that he was discriminated against or coerced by payment of wages in accordance with the collective bargaining agreement.

Lucas also relies on the decision in *United States v. Adamita*, 701 F.Supp. 85 (S.D.N.Y. 1988), in which the Court held that the nonpayment of wages was unlawful where the employer customarily paid wages to other employees who served as jurors and was deviating from a previously established policy by not paying the plaintiff during her jury service. Although Lucas is correct in citing *Adamita* for the proposition that courts have zealously enforced the Jury Act, the facts of *Adamita* are distinct from this action. In *Adamita*, the employer had a custom or policy of paying employees while they served on a jury. However, when the plaintiff became involved in a lengthy trial, the employer refused to pay her more than two weeks wages. The plaintiff's supervisor never advised plain-

---

**3.** In the *Rogers* opinion, Judge Blatt suggested that appropriate authorities should investigate this situation and promulgate a regulation providing salaried and hourly employees with the same level of protection for jury services. *Id.*

tiff that she would not be paid for jury service that extended beyond a two week term. The Court concluded that the burden of the juror's service in that case should be placed upon the employer because it was

> "the employer who has had the practice of paying jurors in the past; it is the employer's representative who failed to timely advise the juror that she would not be paid; it is the employer who has had no policy in the past which dictates that a juror cannot be paid for protracted jury service; and it is the employer who is seeking to deviate from its pre-existing policy based upon the anticipated length of the trial."

*Id.* at 86–87. None of these factors cited by the *Adamita* court are present in this action. In this case, there is a very specific company policy set forth in the collective bargaining agreement providing for only ten days of paid jury service. Lucas was aware of this policy. Matlack complied fully with the terms of the collective bargaining agreement and there is no evidence that Matlack deviated from the terms of the agreement by treating other employees favorably.

Finally, Lucas cites *Hill v. Winn Dixie Stores, Incorporated,* 934 F.2d 1518 (11th Cir.1991), for the proposition that courts have found coercion and intimidation where the employer made negative comments upon learning of the employee's summons for jury duty. In *Hill,* the jury found that Winn Dixie coerced or intimidated Hill in violation of the Jury Act by demonstrating hostility towards her jury service. The jury awarded Hill a $500 civil penalty against Winn Dixie pursuant to 28 U.S.C. § 1875(b)(3). However, in this action, Lucas in his complaint only seeks compensatory damages under § 1875(b)(1) for loss of wages or other benefits and a civil penalty under § 1875(b)(3) for each and every day that Matlack failed to compensate him for his jury service.[4] Lucas has not made any request or prayer for damages based on the alleged incidents of intimidation involving the plant manager. Although the Court agrees with Lucas that the plant manager's statements could amount to coercion under the Jury Act, Lucas has not sought any remedy based on these incidents. Thus, the sole issue before this Court is whether failure to pay Lucas full salary while he served on the grand jury amounts to intimidation under 28 U.S.C. § 1875.

■ In light of the rulings of the many courts having considered this issue, this Court is not convinced that 28 U.S.C. § 1875 imposes upon Matlack a duty to pay Lucas full wages during the term of his jury service. The statute requires Matlack not to discharge, threaten to discharge, intimidate, or coerce Lucas by reason of Lucas' jury service. This Court finds that Matlack's payments to Lucas in accordance with the terms of the collective bargaining agreement do not amount to intimidation or coercion under 28 U.S.C. § 1875. Therefore, Matlack is not liable for lost wages or other benefits, a civil penalty, or any other damages for its failure to pay Lucas full salary during jury duty.

It should be noted that Lucas may have a meritorious claim for damages based exclusively upon the comments made by Lucas' supervisor. *See Hill v. Winn Dixie,* 934 F.2d 1518 (11th Cir.1991); *see also United States, ex rel. Madonia v. Coral Springs Partnership Ltd.,* 731 F.Supp. 1054 (S.D.Fla. 1990). Although both parties have made general reference to a potential claim on this theory and this possible theory was even discussed at the settlement conference, Lucas has not by any pleading requested damages based on these incidents. If Lucas wishes to present a claim based on these potentially intimidating incidents, Lucas would be required to file a motion to amend his original pleadings and succeed in convincing this Court that such a motion at this juncture would not be untimely and should

---

4. In his complaint, Lucas alleges that in addition to failing to pay Lucas full wages, Matlack otherwise threatened, intimidated or coerced Lucas with respect to his lost wages and benefits. Complaint at 3. However, Lucas only seeks "a civil penalty in the amount of $1,000.00 for each and every day that said defendant failed to compensate the plaintiff for his jury service." Complaint at 4. Also in Lucas' proposed pre-trial order, he appears to limit his claim for damages exclusively to lost wages and benefits by omitting any reference to a claim for civil penalties. Plaintiff's Pre–Trial Order at 7–8.

be granted under Fed.R.Civ.P. 15.[5] If such an amendment is allowed, Matlack should be given an adequate opportunity to respond if this legal theory is then properly introduced into this action. While Rule 15 does not incorporate any specific time limit for motions to amend pleadings, in order to expedite resolution of this matter, Lucas shall file any such motion within ten (10) days of the entry of this order. Matlack shall respond within ten (10) days from receipt of any such motion.

Because this Court has determined that Matlack did not discriminate or coerce Lucas by failing to compensate him for his jury service, the Court does not reach Matlack's alternative argument that Lucas should be required to exhaust his administrative remedies before proceeding with this civil action.

## VI. *Conclusion*

Matlack had no duty under 28 U.S.C. § 1875 to pay Lucas full wages during his jury service. With respect to his wages, Lucas was treated according to the terms of the collective bargaining agreement and was treated the same as all other employees. There is no indication that by failing to pay Lucas full wages, Lucas was somehow intimidated or coerced. For these reasons, this Court concludes that Matlack's motion for summary judgment should be and hereby is GRANTED and Lucas' motion for summary judgment should be and hereby is DENIED. Because this Court has provided Lucas the opportunity to seek an amendment of his pleadings, this action shall not be stricken from the active docket of this Court at this time.

---

**5.** While this Court may have the authority to consider this claim *sua sponte, see id.,* the Court prefers to proceed pursuant to Rule 15.