**In re a MEMBER OF a SPECIAL GRAND JURY: DARREN BLAKE.**

No. 07–007.

United States District Court, N.D. Illinois, Eastern Division.

March 14, 2007.

---

*MEMORANDUM OPINION ACCOMPANYING GENERAL ORDER*

HOLDERMAN, Chief Judge.

Darren Blake ("Blake"), a member of a Special Grand Jury of this district, informed the court of his belief that he was terminated from his employment at Evanston Township High School ("ETHS") based on his grand juror status. After conferring with supervisory personnel of the U.S. Attorney's Office for the Northern District of Illinois, who declined the court's request to look into the matter, the court informed ETHS in writing of Blake's claim and asked ETHS to provide the court a response. The court has received

and evaluated all the information provided. The relevant background from the court's review of the materials provided by Blake and ETHS, as well as the court's interview of Blake, lead the court to the following preliminary finding of probable merit on Blake's claims.[1]

Blake, a member of a Special Grand Jury of this district, worked as a full-time custodian during the second shift, 3:30 p.m. to 11:30 p.m., at ETHS from April 20, 1998 until October 24, 2006, when his employment at ETHS was terminated. On November 27, 2006, Blake claimed to this court that he believed his termination was related to his grand jury service. On November 28, 2006, this court sent a letter to ETHS to apprise ETHS of Blake's claim and of Title 28, United States Code, Section 1875. The court in that November 28, 2006 letter requested that ETHS provide the court a written statement of the circumstances regarding Blake's termination and documentation by December 12, 2006. When the court did not receive a timely response, the court's clerk contacted ETHS on December 20, 2006, and was told that they were still in the process of responding. The court extended the time for ETHS to respond until December 29, 2006. In a letter dated December 28, 2006, ETHS responded to this court's requests.

### FACTUAL BACKGROUND

On August 25, 2006. Blake was selected to be a member of a grand jury empaneled by this court. According to Blake, Blake provided to a woman named "Lisa" in the Human Resources Department of ETHS the letter from First Assistant Gary S. Shapiro of the United States Attorney's Office for the Northern District of Illinois, which stated that Blake had been selected for grand juror service, and that the grand jury would meet once a week on Thursdays from 9:30 a.m. to 4:30 p.m. According to Blake, Lisa called Linda Rudolph, the district court's jury administrator, and verified that Blake had in fact been selected for jury duty. Once his jury selection had been verified, Blake was provided with a memorandum dated August 28, 2006 from Yolanda Hardy ("Hardy"), Assistant Director of Human Resources, regarding his selection to the grand jury. The memorandum stated that:

As your employer we are willing to cooperate with your efforts to fulfill your civil duty. Therefore, you will be allowed to arrive at work each Thursday at 6:30 p.m. This is 3 hours later than your assigned start time of 3:30 p.m. If you will be arriving to work later than 6:30 p.m. on Thursday, you must call to inform your Supervisor of this. In addition, we are requiring you to submit to Human Resources, each Friday, a copy of your Grand Jury pay stub that you have received the pervious day. You must submit the Grand Jury pay stub each Friday. If we do not receive your Grand Jury pay stub, you will be docked for the day.

This schedule set by ETHS meant that on Thursdays, when the Special Grand Jury was in session, Blake started his grand jury service at 9:30 a.m. and then, after finishing his grand jury duties, at approximately 4:30 p.m., he was to be at work at ETHS by 6:30 p.m. and work there until 11:30 p.m. His work day each Thursday, while he was still employed at ETHS, when the grand jury met lasted for 12 hours between 9:30 a.m. to 11:30 p.m., inclusive of his grand jury service but excluding travel time to and from jobs. According to Blake, he was expected by

1. Blake and ETHS for the most part submitted identical documentation. The court notes in the background section where information has been provided only by one side, but otherwise the facts are undisputed.

ETHS to perform his entire 8–hour shift in the shortened 5–hour time frame, from 6:30 p.m. to 11:30 p.m. This generally involved his cleaning 24 classrooms, 4 bathrooms, a cafeteria, and performing any necessary special set ups. Blake also reports that no one else had been assigned to assist him on Thursdays when he started his ETHS work at 6:30 p.m.

According to Blake, the ETHS front office made no direct negative comments about Blake's jury service. However, Blake recounted in the November 28, 2006 interview that the lead man for Blake's shift, who Blake states is named "Carlos," told Blake that, when Carlos received a jury summons, Carlos usually threw the paper away and said he never got it.

After Blake was selected as a member of the Special Grand Jury, he missed no days of grand jury service while he worked at ETHS, and, according to the ETHS records, Blake also appeared for work at ETHS on every Thursday when he had grand jury service.

Apart from his grand jury service, however, Blake had a record of absenteeism at ETHS, documented by ETHS with its December 28, 2006 letter. Between July 1, 2006 and October 24, 2006, Blake took 8 sick days, 5 vacation days and 2 personal days. ETHS employs a policy of progressive discipline, which it implemented through verbal and written warnings to address Blake's absences. On Monday, October 23, 2006, Blake asserts that he woke up feeling ill and called ETHS around 10:00 a.m. or 11:00 a.m., about 4.5 hours before his shift began, to inform his supervisor, Anthony Geraghty ("Geraghty"), that he was not feeling well. Blake consulted his primary care doctor, Dr. Ravi Badlani, and ultimately decided to go to a hospital emergency room that day, where he was found to have high blood pressure.

Blake returned to work at his normal starting time the next day, Tuesday, October 24, 2006, and received a letter from Toya Campbell ("Campbell"), the Director of Human Resources at ETHS, advising Blake that she would like to meet with him at 3:30 that day. The letter stated: "As this meeting may lead to disciplinary action, you may wish to bring union representation." At the 3:30 meeting, along with Campbell and Blake, were Jose F. Guerrero, ETHS Manager of Buildings and Grounds and Geraghty's supervisor, Steve Z. Grbavac (Guerrero's supervisor), Homer "Pete" Holt (the evening union representative), and Hardy. Blake was informed that he was being terminated for excessive absenteeism. According to Blake, he explained to no avail at the October 24, 2006 meeting with ETHS personnel that he had brought in a doctor's note for his absence the day before, that he had Hepatitis C, and that his treating doctors had been instructing him to stay home from work.

At that October 24, 2006 meeting, Blake was provided a letter dated October 24, 2006 signed by Guerrero, with copies to Campbell, Grbavac, Geraghty, Holt, and Joseph Taylor, the morning union representative, in which Guerrero recommended Blake's termination. In that letter, Guerrero identified Blake's "excessive absences" as the reason for the termination and summarized Blake's history of absences. According to a printout of Blake's attendance records that Blake provided, the only sick day other than October 23, 2006 that Blake had taken at ETHS since Blake had been become a grand juror was Wednesday, September 6, 2006, for which he was "written up" for "excessive absences."

According to Blake, ETHS posted the vacancy of Blake's custodian position before he was terminated and Guerrero's nephew was hired as Blake's replacement.

As stated earlier in this opinion, Blake claims that his termination was related to his grand jury service.

## LEGAL STANDARD

In 1978, Congress enacted 28 U.S.C. § 1875 to accord statutory protection to the employment status of federal jurors during jury service and to give federal district courts original jurisdiction under 28 U.S.C. § 1363 to hear civil claims brought by jurors alleging wrongful termination in retaliation for jury service. H.R. Rep. 95–1652, 95th Cong., 2d Session (1978), 1978 U.S.C.C.A.N. 5477. Previously, courts had used their contempt powers to punish employers that had retaliated against employees, but relying on contempt powers had been ineffective because jurors were frequently reluctant to report the intimidation or threats and employer action was purposefully designed to evade an effective response by the courts. *Id.* Section 1875 performs several functions to protect jurors from unlawful termination. The statute puts employers on notice of their legal duties, offers employees assurances that their rights are protected by the law, and gives district courts explicit jurisdiction to hear the matters.

Section 1875 creates a statutory right of protection for federal jurors' employment, stating that "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." 28 U.S.C. § 1875(a). Under the statute, a juror is entitled to damages for any loss of wages or other benefits suffered due to a violation. *Id.* § 1875(b)(1). Furthermore, the court may enter injunctive relief, such as reinstatement of a juror's employment. *Id.* § 1875(b)(2). A civil penalty of not more than $1000 per violation may be imposed on the employer as well. *Id.* § 1875(b)(3).

In the protecting of an individual juror's employment, § 1875 has been interpreted to apply to the failure of an employer to accommodate the schedule of an employee who is performing his grand jury service. This is based on the statutory language prohibiting an employer from "intimidat[ing] or coerc[ing] any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service." 28 U.S.C. § 1875. In an opinion that was later voluntarily vacated by the district court judge after the parties settled, *United States ex. rel. Perkins v. Sara Lee Corp.*, 852 F.Supp. 1321 (W.D.Va. 1994), the district judge recognized that the "statute [§ 1875] does not contemplate that the juror must change his working conditions; instead, it protects the juror from any deprivation by his employer during or because of his jury service." *Perkins v. Sara Lee Corp.*, 839 F.Supp. 393, 401 (W.D.Va.1993). In addition, the district judge in *Perkins* noted that "It is particularly critical that a juror not be distracted by concerns for his job security . . . or for any unmet responsibilities at work while he is serving on a jury." *Id.* Another district judge has also held that the purpose of § 1875 is to protect jurors from concerns and distractions related to their wages, seniority status, other benefits, and working conditions, including a deprivation by the employer via a detrimental change in one's schedule. *United States ex. rel. Madonia v. Coral Springs Partnership, Ltd.*, 731 F.Supp. 1054, 1056–57 (S.D.Fla.1990).

Upon application by an individual claiming wrongful termination based on his or her juror status, the court may appoint counsel for the individual if the claim is found to have "probable merit." 28 U.S.C. § 1875(d)(1). Appointed counsel "shall be compensated and necessary expenses re-

paid to the extent provided by section 3006A of title 18, United States Code," the statute addressing payment of appointed counsel for criminal defendants. *Id.* Additionally, should an employee prevail, the court may award attorney's fees to the employee pursuant to 28 U.S.C. § 1875(d)(2).

## ANALYSIS

The issue for the court is whether ETHS's change in Blake's schedule was detrimental to Blake and thus in violation of § 1875. *Madonia*, 731 F.Supp. at 1056–57. The manner in which ETHS accommodated Blake's grand jury service gives the court pause. In response to Blake's once-a-week grand jury obligation, ETHS allowed Blake to start his 8–hour shift three hours late, at 6:30 p.m., but according to Blake, Blake was still expected to perform during the shortened 5–hour shift all the duties he normally performed during his normal work day of 8–hours. In addition, the court considers that Blake's work schedule encompassed both his 7–hour grand jury service, from 9:30 a.m. to 4:30 p.m., and his shortened 5–hour custodial shift, from 6:30 p.m. to 11:30 p.m.

On Thursdays, ETHS's accommodation forced Blake to start work at the grand jury at 9:30 a.m. and travel to ETHS thereafter and work until 11:30 p.m., and to accomplish the duties of an 8–hour shift in 5 hours. Objectively speaking, Blake's custodial work schedule was shortened from 8 hours to 5 hours. The "shortened" schedule, however, could be construed as detrimental to Blake if he was expected to complete all the duties that he was assigned to perform in his 8–hour shift during his 5 hour shift. Moreover, the overall length of his work day on Thursdays—from 9:30 a.m. to 11:30 p.m.—could also be considered a burden on Blake's ability to perform his grand jury service and fulfill ETHS's expectations. Finally, without further investigation of this claim, there is no way to know whether the stress of Blake's Thursday schedule had affected his health, such as elevating his blood pressure and leading to his taking of the sick day on October 23, 2006, the day before his October 24, 2006 termination. The court also takes note of the statement by Carlos, the lead man for Blake's shift, suggesting to Blake that illegally evading jury service is an available option.

At this preliminary stage, the court finds there is sufficient evidence to establish the statutorily required "probable merit" that the ETHS's requirements of Blake during his grand jury service created a detrimental change in his work schedule and his working conditions. *Perkins*, 852 F.Supp. at 1321; *Madonia*, 731 F.Supp. at 1056–57. Such action by ETHS appears to fit under § 1875's prohibition against the intimidation or coercion of any permanent employee by an employer due to the employee's grand jury service. 28 U.S.C. § 1875.

In making this ruling that there is probable merit that ETHS violated § 1875, the court emphasizes that this finding is based on a preliminary evaluation of Blake's claim and constitutes a preliminary finding that Blake's claim is likely but is not certain to have merit.[2] Appointed counsel should undertake a further prefiling investigation to make a determination consistent with Federal Rule of Civil Procedure 11 of whether a civil suit should be filed.

## CONCLUSION

The court orders the appointment of counsel for grand juror Darren Blake pur-

---

**2.** The term "probable" is defined as "likely, but uncertain; plausible." *See* probable. Dictionary.com. The American Heritage® Dictionary of the English Language, Fourth Edition. Houghton Mifflin Company, 2004, *available at* http://dictionary.reference.com/browse/probable (January 24, 2007).

suant to 28 U.S.C. § 1875 and appoints attorney Richard Gonzalez to represent grand juror Darren Blake in his claim of retaliation against his former employer, Evanston Township High School. Appointed counsel is requested to contact Darren Blake.